# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

SHERRY W.,[1]                                    6:20-CV-01197-BR

       Plaintiff,                     OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

       Defendant.

**KATHERINE EITENMILLER**
**BRENT WELLS**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

      Attorneys for Plaintiff

**SCOTT ASPAUGH**
Acting United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
(503) 727-1021

---

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**DANIELLE R. MROCZEK**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2946

Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Sherry W. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on May 14, 2014, alleging a disability onset date of November 2, 2012. Tr. 378-79.[1] The application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on February 3, 2017. Tr. 128-73. Plaintiff was

---

[1] Citations to the official transcript of record filed by the Commissioner on October 21, 2020, are referred to as "Tr."

represented at the hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on April 4, 2017, in which he found Plaintiff is not entitled to benefits.  Tr. 201-20.  The Appeals Council, however, issued an order on May 12, 2017, in which it reversed the ALJ's decision, remanded the case to the ALJ, and ordered the ALJ to "[f]urther evaluate the claimant's past relevant work and determine whether she can perform it as actually or generally performed" and to "[o]btain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any, vocational adjustment to other occupations." Tr. 224.

On April 26, 2019, the ALJ held a second hearing.  Tr. 47-94.  Plaintiff was represented at the second hearing.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on June 26, 2019, in which he found Plaintiff was not disabled from November 2, 2012, her alleged onset date, to her March 31, 2019, date last insured and, therefore, is not entitled to benefits.  Tr. 14-25.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on May 27, 2020, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-7.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on April 15, 1953; was 63 years old at the time of the first hearing; and was 66 years old at the time of the second hearing. Tr. 378. Plaintiff has "at least a high school education." Tr. 215. Plaintiff has past relevant work experience as a claims analyst/processor and insurance clerk. Tr. 24. Plaintiff alleges disability due to neuritis; "sacroiliitis; facet syndrome, lumbar; spondylosis lumbosacral without myelopathy; syndrome, postlaminectomy, lumbar; leg pain; [and] enthesopathy of hip region." Tr. 174.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 21-23.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is

4 - OPINION AND ORDER

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the

record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9ᵗʰ Cir. 2012).

The court may not substitute its judgment for that of the

Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9ᵗʰ Cir.

2006).


## DISABILITY ANALYSIS

### I.    The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential

inquiry to determine whether a claimant is disabled within the

meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9ᵗʰ Cir.

2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful

activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v.

Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9ᵗʰ Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner

determines the claimant does not have any medically severe

impairment or combination of impairments.  20 C.F.R. §§ 404.1509,

404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner

determines the claimant's impairments meet or equal one of the

listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  20 C.F.R.

§ 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the

Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from her November 2, 2012, alleged disability onset date to her March 31, 2019, date last insured (the relevant period). Tr. 16.

At Step Two the ALJ found Plaintiff had the severe impairments of "degenerative disc disease, left knee contusion (status-post injury and surgery), and obesity" during the relevant period. Tr. 17. The ALJ found Plaintiff's impairments of "rotator cuff syndrome," anxiety disorder, and affective disorder were not severe during the relevant period. Tr. 17.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments during the relevant period did not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. Tr. 18. The ALJ found

Plaintiff had the RFC to perform light work during the relevant
period with the following limitations:

> [Plaintiff could] stand and walk 4 hours in an 8
> hour day, and sit for 6 hours in an 8 hour day.
> [Plaintiff could] never climb ladders, ropes, or
> scaffolds, and can occasionally stoop and crawl.
> [Plaintiff could] occasionally reach overhead with
> her right, dominant, upper extremity. [Plaintiff
> could not] tolerate any exposure to workplace
> hazards such as unprotected heights and exposed
> moving machinery.

Tr. 19.

At Step Four the ALJ found Plaintiff could perform her past
relevant work as a claims analyst/processor and insurance clerk
during the relevant period, and, therefore, Plaintiff was not
disabled from her November 2, 2012, alleged onset date, through
her March 31, 2019, date last insured. Tr. 24.


## DISCUSSION

Plaintiff contends the ALJ erred when he (1) partially
rejected Plaintiff's testimony; (2) partially rejected the
statement of Patricia W., Plaintiff's sister; (3) partially
rejected the opinion of Annette Weller, M.D., treating physician;
and (4) found at Step Four that Plaintiff could perform her past
relevant work during the relevant period.

**I.  The ALJ did not err when he partially rejected Plaintiff's
testimony.**

Plaintiff alleges the ALJ erred when he partially rejected

Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750

(9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the first hearing on February 3, 2017, that she worked "four to twelve hours a week" in "four-hour shifts" at a bookstore. Tr. 139. Plaintiff drove 20-30 minutes to her job. At work she helped customers, filled coffee and soda cups, did "cashiering," and sold bus passes. Tr. 139-40. Plaintiff noted she could sit, stand, lean on the counter, and move around the store when necessary. Plaintiff testified moving around the store was preferable to merely sitting and standing because it "helps . . . loosen up [her] back a little bit" and "relieves a little bit of the pressure." Tr. 152. Plaintiff testified she was unable to work more hours because she "can't sit for very long . . . [or she gets a] very sharp pain that goes up [her] back" and she "can't stand for very long" because it hurts her back. Tr. 148. Plaintiff stated she babysat her four-year-old grandson two days per week from 7:00 a.m. to 2:30 p.m. Plaintiff testified she would not be able to do her past relevant work because she is unable to sit for eight "or even six" hours a day. Tr. 154. Plaintiff noted she would not be able to work in a bigger store because she would not be able to stand at a counter all day. She also noted she was not taking any pain medication for her back pain.

Plaintiff testified at the second hearing on April 26, 2019, that she injured her back falling out of a chair in November 2012, went to physical therapy, and was told to get up and walk around every fifteen minutes. When Plaintiff returned to work, she got up every fifteen minutes and walked around for "maybe ten minutes." Tr. 56-57. Plaintiff stated she was fired after "probably a week" for failing to keep up with processing her claims "because of having to get up like that." Tr. 56. Plaintiff noted she did not believe she fell behind in her claims processing, but her supervisor indicated Plaintiff was not processing claims "as fast as they wanted [her] to go." Tr. 57. Plaintiff testified she feels pain in her lower back, hips, and thighs when she sits for too long. Plaintiff noted she was still working at the bookstore for eighteen hours per month in six-hour shifts. Plaintiff stated she was able to stand without pain for ten-to-fifteen minutes after which time she had to sit or to lie down. Plaintiff testified she still watches her grandson after school Monday through Thursday for two and one-half hours. When Plaintiff is not working or taking care of her grandson, she takes care of her chickens.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are

not entirely consistent with the medical evidence and other
evidence in the record." Tr. 20. The ALJ noted Plaintiff
reported back pain during the relevant period due to her November
2012 injury, but she was treated conservatively throughout the
period with physical therapy and medications. In addition, the
record reflects Plaintiff made "good, steady progress" in
physical therapy and reported a "good response" to physical
therapy and "feeling good about her back." Tr. 21, 662, 665,
689, 693, 704. For example, on November 15, 2012, Plaintiff
reported to Sharon Flynn, M.D., treating physician, that she had
"started physical therapy which . . . helped her dramatically.
She reports she is about 80% better, although she still has a
sensitive spot on her left lumbar spine, worse with prolonged
sitting." Tr. 667. Dr. Flynn noted Plaintiff was "somewhat
tender to palpation" over her "left SI joint," but she did not
have any "palpable muscle spasms," "pain over the midline lumbar
spine," or "pain over gluteal muscles." Tr. 667. Plaintiff
continued to report improvement in her lower-back pain throughout
April and May 2013 including pain in the range of "1-2/10,"
successful participation in water aerobics, and an "overall
reduction in . . . back symptoms." Tr. 732, 735, 745. In May
2013 Plaintiff strained her back "bending over while doing
laundry," but she improved with continued physical therapy and
reported in June 2013 that she "fe[lt] much better with her back

pain . . . and start[ed] pool therapy." Tr. 748, 754.
Nevertheless, on January 17, 2014, Plaintiff reported continued
lower-back pain and Dr. Flynn noted "[i]t appears to be more of a
chronic problem at this point." Tr. 779. On July 15, 2014,
Plaintiff reported to Dr. Flynn that she fell on July 4, 2014.
Plaintiff stated she "was getting onto the ground to
play with her grandson when she lost her balance and fell
directly onto her left knee." Tr. 819. Plaintiff noted she was
"managing [her lumbar pain] with Tramadol and [was] working out
in an exercise class," but she had pain in her right knee after
her fall. Tr. 819. Dr. Flynn recommended "ibuprofen, ice and
time" for Plaintiff's pain. Tr. 819.

In May 2015 Plaintiff reported to Dr. Flynn that she had
taken a trip to Hawaii in April 2015 and walked on the beach.
Plaintiff did not report any aggravation of her lower-back pain,
but she noted a wave had knocked her over and she hit and bruised
her left ankle. On May 6, 2015, Plaintiff advised Lauri Davis,
P.T., treating physical therapist, that she was having increased
back pain because she was "having to work full time with a 2 hour
break . . . over the past couple of weeks." Tr. 1040. On
June 10, 2015, she advised P.T. Davis that she had "been working
7 hour days often 4x a week" and had been having increased lower-
back pain. P.T. Davis, however, noted Plaintiff was "making
progress in muscle function, strength and being able to be in

more stable control."  Tr. 1030.

On November 20, 2015, Plaintiff reported to Dr. Flynn that in early October 2015 she had "worsening of her back pain, but . . . it is better now and she is feeling better" except for "residual back pain."  Tr. 1014.  Plaintiff requested Dr. Flynn provide her with a note excusing her from jury duty due to her back pain.  Dr. Flynn declined to provide Plaintiff with a note because "I do think that she has the ability to do jury duty and jury duty selection."  Tr. 1014.  Dr. Flynn discussed her refusal to provide Plaintiff with an excuse for declining jury duty. Plaintiff disagreed, and "[i]t came out [that Plaintiff] has concerns about financial hardship.  Discussed that if this is the real issue, she needs to talk to the jury selection process regarding this, and address that issue head-on, but from a physical standpoint, I do think she has the ability to present herself for jury duty."  Tr. 1014.

On April 15, 2016, Plaintiff reported to Dr. Flynn that she was having neck pain.  Plaintiff noted she "is traveling, and she is trying to loosen up with some exercises . . ., however . . . she is very tight and uncomfortable."  Tr. 987.  Plaintiff underwent an x-ray of her cervical spine that reflected a "mild loss of [disc] space height" at C4-5 and C5-6.  Tr. 985. Plaintiff began physical therapy on her cervical spine, and in July 2016 Plaintiff reported "good relief from her symptoms" and

"generally having more comfort and able to do her work duties with less pain and limitation." Tr. 964. On September 27, 2016, Plaintiff was seen by James Kassaube, M.D., who noted Plaintiff sat "without fidgeting or repositioning" and had full cervical range of motion as well as a "smooth and tandem [gait] without antalgia." Tr. 941-42. Dr. Kassaube reviewed Plaintiff's cervical x-ray and recommended "treatment focusing on muscle, as [he felt] this is where most of her pain is coming from." Tr. 943. On September 27, 2016, Plaintiff reported to P.T. Davis that she had an "overall reduction in [lower-back] pain" even though she worked "2 days this week 4 hours per day with standing and checking positions only. When not at work she is doing some babysitting for a grandchild and then house activities." Tr. 940. In October and November 2016 Plaintiff "work[ed] more hours at her job," was "trying to walk and exercise," and reported a continued overall reduction in her lower-back pain. Tr. 928, 937, 939.

In March and April 2017 P.T. Davis continued to report that Plaintiff had "some reduction" in her lower-back pain. Tr. 1359. On May 23, 2017, Plaintiff reported to Dr. Flynn that she had "obtained some relief with physical therapy." Tr. 1322. Plaintiff discussed with Dr. Flynn whether Plaintiff "would make criteria for disability." Tr. 1322. Dr. Flynn advised Plaintiff that her "feeling was that [Plaintiff] could work in [a]

reasonable work environment where she could get up and move every few hours." Tr. 1322. Dr. Flynn also advised Plaintiff that "[s]he did not meet criteria regarding her back pain for medical marijuana." Tr. 1322.

On July 21, 2017, Plaintiff was seen by Ryan Embley, treating physical therapist, and "demonstrate[d] significant functional weakness with the exercises." Tr. 1277. P.T. Embley noted Plaintiff's pain "appears related to prolonged postures and poor endurance." Tr. 1277. P.T. Embley "instructed [Plaintiff] in the importance of improving her posture [and] . . . to change positions no less than every 30 minutes." Tr. 1277.

On November 30, 2017, Plaintiff injured herself when she missed the last step on a step ladder at work, lost her balance, "fell backwards and hit her left arm & left side rib area on a round coke machine. She landed on her butt inside a food delivery plastic box." Tr. 1464. On January 11, 2018, Ashley Marreel, D.N.P., examining nurse practitioner, noted Plaintiff had an "essentially unremarkable" physical examination. Tr. 1466. Specifically, Plaintiff did not have any "vertebral spine tenderness"; had a full range of motion in all directions "with increased pain"; had a negative, bilateral straight-leg raise; had "normal bilateral lower extremities"; and had a normal, bilateral sensory examination of her lower extremities. Tr. 1466. On February 19, 2018, Plaintiff was seen by John

White, M.D., examining physician, because of increased pain in her lower back.  Dr. White noted Plaintiff had "vertebral spine tenderness," limited range of motion "in all directions secondary to pain," and a "minimally positive" straight-leg raise on the right side.  Tr. 1454.  Dr. White prescribed physical therapy. Plaintiff began physical therapy and reported improvement in March and April 2018.  On May 9, 2018, Plaintiff reported to D.N.P. Marreel that she "fell again 6 days ago. . . .  She stepped up onto the curb and fell on her left elbow and knee." Tr. 1441.  Plaintiff, however, was not taking any pain medication or muscle relaxers, and she "fe[lt] her symptoms are starting to improve" with physical therapy.  Tr. 1441.

On January 11, 2019, Plaintiff reported to Alejandro Colmenero, PA-C, examining physician's assistant, that "a few days before Christmas . . . a lady accidentally hit her back with a shopping cart," which exacerbated her lower-back pain. Tr. 1403.  PA-C Colmenero noted Plaintiff had a

> right paraspinal spasm, very mild tenderness on exam. . . .  Normal flexion and slight discomfort elicited on right and left lateral bend, worse on left sided bend.  Straight leg raising test: negative bilaterally.  Motor system:  normal bilateral strength in thighs and distal ext.  Norm flexion, extension, abduction and adduetion. Sensory exam:  normal.  Reflexes:  normal patellar.  Gait:  normal. Posture good.

Tr. 1405.  PA-C Colmenero diagnosed Plaintiff with lumbar strain, referred Plaintiff to physical therapy, and advised Plaintiff

to continue to perform the stretches and exercises
to strengthen the back muscles to prevent
exacerbations such as this one.  Walking is the
best treatment for back strain.  Recommended yoga
to further elongate the spine and increase range
of motion of the back.  Also told the patient is
OK to take over the counter NSAID's for moderate
pain relief as needed as well as using a heating
pad or ice for discomfort, whichever patient finds
most beneficial.

Tr. 1405.

The ALJ found the medical record did not support Plaintiff's
reported level of pain and limitation.  In addition, the ALJ
noted Plaintiff took care of her young grandson during the
relevant period either two days a week for seven hours a day or
four days a week for over two hours.  Plaintiff also continued to
work part-time, to drive to her job, and to travel.  The ALJ also
found these daily activities did not support Plaintiff's alleged
level of pain and limitations.

The Court concludes on this record that the ALJ did not err
when he partially rejected Plaintiff's testimony regarding the
intensity, persistence, and limiting effects of her symptoms
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

II.  **The ALJ did not err when he partially rejected the
     statements of Patricia W., Plaintiff's sister.**

Plaintiff alleges the ALJ erred when he partially rejected
the testimony of her sister Patricia W.

Lay-witness testimony regarding a claimant's symptoms is

competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel.
Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006). When "the ALJ's error lies in a failure to properly
discuss competent lay testimony favorable to the claimant, a
reviewing court cannot consider the error harmless unless it can
confidently conclude that no reasonable ALJ, when fully crediting
the testimony, could have reached a different disability
determination." *Id.* at 1056.

On August 3, 2014, Patricia W. filled out a Third-Party
Adult Function Report in which she noted she spends "6-10 [hours]
a week" with her sister "go[ing] to the pool and walk[ing] in the
water" or visiting at each other's houses. Tr. 473. Patricia W.
stated Plaintiff "has to sit, stand, and laydown because any one
[position] for long periods of time is too painful." Tr. 473.
Specifically, Patricia W. noted Plaintiff is able to sit for ten
minutes at a time and to "stand for 20 minutes at a time then sit
again or lay down to rest her back." Tr. 473. Patricia W.

stated Plaintiff does light cleaning, "small loads of laundry,"
puts dishes in the dishwasher, cleans once a week, vacuums for 15
minutes, and mops for 15 minutes.  Tr. 475.  Patricia W. noted
Plaintiff no longer travels because "she can't sit long or stand
long."  Tr. 477.  Plaintiff goes to the pool three times a week,
visits with friends and family three or four times a week, and
works three days a week for four hours.

The ALJ gave "partial weight" to Patricia W.'s Third-Party
Function Report.  Patricia W.'s report is substantially similar
to Plaintiff's testimony, and the Court has already concluded the
ALJ did not err when he partially rejected Plaintiff's testimony
because the ALJ provided support for his opinion based on
substantial evidence in the record.  For the same reasons the
Court concludes the ALJ did not err when he partially rejected
Patricia W.'s statement.

**II.  Opinion of Annette Weller, M.D., treating physician.**

Plaintiff alleges the ALJ erred when he partially rejected
the opinion of Dr. Weller.

An ALJ may reject a treating physician's opinion when it is
inconsistent with the opinions of other treating or examining
physicians if the ALJ makes "findings setting forth specific,
legitimate reasons for doing so that are based on substantial
evidence in the record."  *Thomas v. Barnhart,* 278 F.3d 947, 957
(9th Cir. 2002).  When the medical opinion of an examining or

treating physician is uncontroverted, however, the ALJ must give

"clear and convincing reasons" for rejecting it. *Thomas*, 278

F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th

Cir. 1996).

On October 5, 2013, Plaintiff reported to Dr. Weller that

she had lower-back pain at "5/10" that is "worse with walking but

sometimes is better after she has walked." Tr. 555. Plaintiff

noted she has to change positions frequently due to pain. On

examination Plaintiff had limited range of motion, "some mild

tenderness," "no significant palpable muscle spasm," negative

straight-leg raise, and "5/5 [strength in her] bilateral lower

extremities. Tr. 555. Dr. Weller discussed with Plaintiff an

October 11, 2012, MRI of Plaintiff's lumbar spine that reflected

"no evidence of any significant focal disc herniation, central

stenosis or neuroforaminal narrowing[,] . . . degenerative

changes most notable at the L5-S1 level with associated facet

arthropathy at multiple levels but especially at L5-S1

bilaterally." Tr. 555. Dr. Weller noted "[f]rom a vocational

standpoint, discussed recommendation for a sedentary to light

level of work activity. I believe she would benefit from having

a sit/stand desk such that she can alternate positions as

needed." Tr. 555.

On January 15, 2014, Plaintiff reported to Dr. Weller that

she got a job at Harry & David, but it involved "prolonged

sitting, and within a week her [lower-back pain] symptoms flared." Tr. 551. Plaintiff rated her pain at "7/10" and noted she "does not tolerate water exercises due to problems with shoulder pain." Tr. 551. On examination Dr. Weller noted Plaintiff had "very restricted" lumbar range of motion, "some tenderness with palpation bilateral lumbar paraspinal region," "5/5 [muscle strength] throughout both lower extremities," and negative straight-leg raise. Tr. 551. Dr. Weller opined Plaintiff's "degenerative lumbar disease at the L5-S1 level and the facet arthropathy are likely major factors for her current problems rather than the work injury with the strain injuries," that Plaintiff's "pre-existing condition of lumbar degenerative disc disease is the major cause of her need for treatment and that the work injury of 09/18/2012 is no longer playing a material role," and that Plaintiff "is likely disabled from the lumbar degenerative disc disease given her limited ability to even sit for an extended period." Tr. 551-52.

The ALJ gave Dr. Weller's "statements regarding [Plaintiff's] vocational functional abilities" little weight on the ground that they were based on Plaintiff's subjective reports of difficulty with prolonged sitting over a "very short period of two weeks." Tr. 21. The ALJ also noted Dr. Weller's statements were inconsistent with Dr. Flynn's denial of Plaintiff's request for a note excusing her from jury duty or with Dr. Flynn's

statement that Plaintiff could work "in a reasonable . . . environment where she could get up and move every few hours." Tr. 1322. In addition, Dr. Weller's statement that Plaintiff's "pre-existing condition of lumbar degenerative disc disease is the major cause of her need for treatment" is contradicted by Dr. Kassaube who indicated Plaintiff's "treatment [should] focus[] on muscle, as this is where most of her pain is coming from." Tr. 943. The ALJ also noted Dr. Weller's statement that Plaintiff "is likely disabled from the lumbar degenerative disc disease given her limited ability to even sit for an extended period" addresses an issue reserved to the Commissioner, and, therefore, is not due "any special significance." *See* 20 C.F.R. § 404.1527(d). In addition, the basis for Dr. Weller's statement is undermined by the record, which reflects Plaintiff flew to Hawaii in April 2015, walked on the beach in Hawaii, and was able to work part-time and care for her grandson.

On this record the Court concludes the ALJ did not err when he partially rejected Dr. Weller's opinion because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

**III. The ALJ did not err in his assessment of Plaintiff's RFC.**

Plaintiff alleges the ALJ erred in his assessment of Plaintiff's RFC when he failed to include a sit/stand requirement. Specifically, Plaintiff notes Dr. Flynn

stated Plaintiff would be able to work in a reasonable environment "where she could get up and move every few hours" and recommended Plaintiff ask her employer "to see if she can get [accommodations] where she has a standing desk." Tr. 772, 1322. The ALJ, however, did not include a limitation in Plaintiff's RFC that Plaintiff requires the option to sit, to stand, or to change positions at will.

At the April 26, 2019, hearing the ALJ asked the VE to assume a person could perform light work "except [she] can stand and walk four hours in an eight-hour day, and sit for six hours in an eight-hour day, and that is presuming regular breaks." Tr. 86. SSR 96-9p makes clear that a customary eight-hour workday schedule includes breaks at two-hour intervals. 1996 WL 374185, at *6 ("[A]n individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."). Thus, there is not any indication that Dr. Flynn's statement that Plaintiff could perform work "where she could get up and move every few hours" required the ALJ to include the option for Plaintiff to sit, to stand, or to change positions at will. As noted, Dr. Flynn also suggested Plaintiff find out whether her employer could provide an accommodation for a standing desk, but Dr. Flynn did not state Plaintiff required a standing desk. *See Valentin v. Comm'r*, 574

F.3d 685, 691 (9th Cir. 2009)("To be sure, the doctor noted [the plaintiff] 'is less likely to have difficulty with [such tasks].' But this notation appeared in a section of Dr. Storzbach's report entitled 'Recommendations.' Nowhere in this section does Dr. Storzbach indicate [the plaintiff] is incapable of working *except* under the recommended conditions.")(emphasis in original).

On this record the Court concludes the ALJ did not err in his assessment of Plaintiff's RFC when he failed to include a sit/stand requirement.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 13th day of May, 2021.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge